Good morning. May it please the court. My name is Melissa Tuohy. I'm with the Office of the Federal Public Defender appearing today on behalf of the appellant Mr. Gumaer. On November 29, 2016, the government violated the law by removing Mr. Gumaer from state custody pursuant to a false testimonial writ to bring him to the United States Attorney's Office for the undisputed purpose of securing his cooperation in his pending federal case. At that meeting, the government unjustifiably interfered with Gumaer's Sixth Amendment right to counsel. The government abused power in order to accomplish its goal and violated Mr. Gumaer's Fifth Amendment substantive due process rights to fair proceedings. Are you arguing that the Sixth Amendment right to counsel had attached at that point? Yes, I am, Your Honor. And what is the basis for that argument? Well, certainly, and I understand that the government intends to raise this during their argument, but certainly the his right to counsel attached, there was a criminal complaint filed against him. Although it was sealed again, in our brief, we argued that that was unjustifiably sealed by that point in time on November 29. The government's own evidence proved everything that was used to bring the eight-count indictment against Mr. Gumaer was known by November 3rd. Also, Your Honor, the government violated its own sealing order by discussing the contents of the criminal complaint with him at that November 29th meeting. The theory is that the Sixth Amendment right attaches because the complaint was sealed when it shouldn't have been. Well, the complaint was filed and the case law that's cited in our brief is that when, whether it's by formal charge, when the government has committed itself to prosecute the defendant, there's an adversarial proceeding. Certainly, there's a joint prosecution happening at the moment. The state and the federal government is confronting him with the evidence. They're discussing how they want the case resolved in the state matter, which is conditioned upon him cooperating in the federal case. And the government is talking about seeking possible plea to charges that may be coming in addition to the sealed charges that they're talking to him about. They're showing him the evidence. And the reason that his right to counsel attaches is because they are prosecuting him and it can't be that the government gets the benefit of his right not attaching by not bringing him into federal custody because they are the reason he is not into federal custody where he can see a magistrate and notify the court that he cannot afford counsel. In the normal case, and correct me if I'm misunderstanding this, but in the normal case, if he hadn't been in custody and the government had obtained a criminal complaint and an arrest warrant with the intention of going out and finding him, we wouldn't say the Sixth Amendment right had attached then, would we? We'd say it attached when he's presented in court on that complaint. Well, right. So the reason, so, but they, no, I have to say that the government has committed itself to prosecute. The adverse positions of the government and the defendant have solidified and the accused finds himself faced with the prosecutor. What's your best case for that proposition? So that is cited by, that's cited in the, this circuit's decision in Stein and in this circuit's decision, United States versus Moore, which the government is going to present to the court during its argument, which is citing a Supreme Court precedent. So even if he, if it did attach, he did have a lawyer at the meeting though, right? So it's our, it's our. Mr. Kilker was. Mr. Kilker was there. That was his state court assigned counsel. He notified everyone in the room that he was appearing only for the state charges. And he said he was neither retained nor assigned on the federal matter. So what about this testimony by Kilker? Yes. So is it fair to say that at that meeting you gave the impression to everyone else that you were going to be seeking to represent him on the federal side if the family comes up with the money? That's page 238 of the appendix. Yes. Yes, we would have. So the only, he was there and he said, yeah, I'm going to represent him. I just, his family's got to come up with some more money if I'm going to do the federal case as well as the state case. Right? Well, there's a couple of problems with that, your honor. First of all, Mr. Goomer is indigent. He was speaking, that was in response to the prosecutor stating that they wanted Mr. Kilker to take the case in a retained matter for an indigent client. The impression that Kilker left was that he would be representing him. I have to respectfully disagree with that because he said, first of all, I don't even know when these conversations with Mr. Goomer's family could have happened. Mr. Kilker testified that he never spoke with Mr. Goomer's family. And the family members that are at issue are involved in the prosecution against Mr. Goomer. They're talking about his sister in Florida who presented evidence against him that is in the hands of the FBI that they have reviewed. So, and they're having the conversation in response to Mr. Kilker stating he needs the federal public defender. I'm only here on the state matter. So, the government has a constitutional obligation at that moment to make sure that his Sixth Amendment right to counsel is secured. And they did not do that by bringing him to the magistrate where he could have applied for counsel through the filing of a financial affidavit. And this is- Kilker was experienced on the federal side, too, though, right? He had some limited experience. But his testimony stated that he wasn't even paying attention to anything that was going on with the federal case. And another reason why this is problematic, Your Honor, is because they're talking to Mr. And then they're saying all these other charges are coming and they're talking about charges that aren't written down. They're saying sexual exploitation about two victims and this could happen or that couldn't happen and maybe it's 15 years, but we're going to ask for 60. And- But he sent the videos of the two girls to his sister, right? Yes. So he knew what they were talking about. Well, he still presumed it. No surprise to him. He sent the videos. But I think that's, I think that he's presumed innocent at that moment. I mean, he's entitled to the presumption of innocence. And that's the problem, too, because he doesn't have any advocate defending him or testing the evidence. Nothing has been tested at that point. And Mr. Gumier's- Back to the idea of whether the right to counsel or the basis for saying it attached. If it hadn't attached on the federal charges, this would just be sort of standard investigative behavior, right? They could introduce an undercover to get evidence from him. They could go knock on his door and say, we'd like to interview you. We think you might be charged. And so in some sense, if the right to counsel hadn't attached, he was benefited by having an attorney there who was giving him some degree of advice. But I think that there's problems with that because, Your Honor, he, let's not forget, he's in the room illegally. So it's, he's not consenting to engage in this. And it's interesting because during the evidentiary hearing, when Mr. Kilker testified that he was surprised to even see Mr. Gumier there, he thought it was a meeting about the joint prosecution. And Mr. Lovric said to him, well, why didn't you complain? First of all, because the matters are sealed, he can't even search the docket. He can't even know that a writ was applied for in violation of law to move to quash it. He's not even on the docket. He's not representing him in federal court. So I think that it's a different circumstances. This isn't like a voluntary knock and announce, like they removed him from state custody. And he can't object. It's a court order. It's a writ that the agent is executing. Can I just clarify a few things? Yes. I couldn't, you say in your reply brief that the right to counsel attached by the time of the November 29th meeting. Where do you say that in your opening brief? Do you say in your opening brief? I think that, Your Honor, do you mind what page that was? I'm sorry, in my reply. You say it in your reply brief, but where in your opening brief do you make that? First, I don't, that might have been a misstatement. I think his right to counsel attached definitely on November 29th in that room. And we also, Where in your opening brief? You can tell me when you come back. Okay, yes, yes. I'd like you to find that. And just a few other questions. I'm trying to understand the prejudice to your client of the government's decision to file the arrest warrant and criminal complaint under seal. So, Your Honor, we're arguing that the prejudice is presumed under the analysis set forth in Stein that relies on the United States Supreme Court decision in the United States versus Gonzales-Lopez. That this is a structural error that affects the framework of the proceedings and therefore prejudice is presumed. This is not a harmless error analysis case because the harm cannot be quantified. The deprivation of his right to counsel is complete upon the erroneous deprivation of the right to counsel. So we're arguing that it is presumed under the analysis set forth in Stein and the Supreme Court precedent. If there were error, would you agree that the proper remedy is just suppression of the confession? No, Your Honor, I would not agree. I think because that cannot restore him to the place he would have been but for the constitutional deprivations that were caused and created by the government. Suppression isn't going to undo the fact that he has a state conviction that was imposed first that carries a 25 year sentence for a 50 year old man that has to be served before he can even start serving his federal sentence. So the right to counsel applies at all critical stages of the proceeding, which includes sentencing, which the federal public defender had no ability to mount a defense. And that's another error in relying on Mr. Kilker's presentation. The guideline calculations in the pre-sentence report begin at paragraph 23 and continue through paragraph 76, he was not prepared to meet that. He didn't even know the statutes that were involved or the penalty provisions to address all of that. I just want to address one more thing about the attachment issue. I will argue that the government never raised that in defense of our argument. So that is waived, and we did cite to Stein which said this pre-indictment conduct that affects the post-indictment. Stein is a case, isn't it, where the question was whether in part the defendants were deprived of getting the lawyer that they wanted. Correct. That's not this case, is it? It's the, well, the right at stake is the right to counsel. In that case, it was the right to counsel of choice. Here, Mr. Goumier is indigent, so it's the right to the assignment of counsel based on his indigency. Thank you, Your Honor. May it please the court, Paul Silver for the government. If I may, as counsel indicated, I have an additional citation I'd like to provide the court. I have three copies, if I can hand them to the clerk. The case is United States versus Moore. The citation is 670 Fed 3rd, 222. And in determining whether a Sixth Amendment right had attached pre-indictment, I'd like to read one sentence, which said, absent a formal charge, arrest on a warrant, even one issued pursuant to a criminal complaint, sworn out by prosecutors is insufficient prior to the initial appearance before a judicial officer. And that was in the context of whether the Sixth Amendment right had attached. I looked at this case because, as I understood the opening brief, the principal claim, if not the sole claim, was that. In connection, pursuant to Stein, the activities that occurred, that are complained about by the government, occurred prior to the attachment of the Sixth Amendment right to counsel. But the effect of those pre-attachment activities had a post-attachment effect. And we have argued here that the only thing that has a potential problem created for him by the activities pre-Sixth Amendment is the admission of this confession or obtaining the confession. The confession is an important part of the case. It is, but counsel is wrong when she said that. Two hours, wasn't it? Two hours of a confession. I believe that's correct. But the confession was not, as counsel indicated in her remarks here today, cooperation in the federal case. Submitting to an interview by the FBI was asked for by the state prosecutor to determine if there were additional victims. In return for engaging in that interview with the FBI, the state agreed to limit the exposure to the 25 years, or to recommend the 25 year sentence based on the one rate, rather than to seek a life sentence based on more than one rate. More than one rate. It- Is it a problem that, on the one hand, Kilker seemed to represent that if he only got some more money, he'd be able to represent Gamir. And what he says, he says he didn't ask for the copies of the federal charges, that he did no research about the possible charges or penalties that Gamir would face in federal court. He said he didn't do it, do so because he was, he was only representing Gamir on, on his state charges. He also testified that he never discussed possible federal charges or sentences with, with Gamir, and that Gamir was, and I quote, on his own at the meeting in regards to the federal charge. He also said that he referred to the possibility of a plea to only two counts during his, his conversation. In that circumstance what, what, what what could, could Gamir do? What can he do? Well. If he, can he say that there was some ineffective assistance of, of counsel claim? Could he bring that later? No. And the reason for that is, there was no right to counsel. So as Judge Livingston . . . You have to have a, and, and you have to have a right to counsel to argue about ineffective assistance, and the right to counsel attaches on some formal charge, and in the context it, it doesn't attach when you, all you've done is get an arrest warrant on the basis of a complaint. In effect, there was an attorney present who was not the attorney of record on the federal charge, but Mr. Gamir had no right to counsel on the federal charge during that meeting on the 29th. Was he a counsel or not? This is what I'm trying to understand. Well, I, I think Judge McAvoy was generous in assessing Attorney Kilker's, the effect of Attorney Kilker's presence. What I would say to this court is . . . Generous means what? I'm just trying to understand. Generous in that the record is clear, Attorney Kilker clearly had some discussions with Mr. Gumar about what to do in connection with the federal charge, Judge McAvoy interpreted that to mean Attorney Kilker was suggesting a global resolution of the state and federal charges, but all of the things that were pointed out to you by my adversary today that were Mr. Kilker made clear, I do not represent Mr. Gumar on the federal charges, can't be discounted. My answer to weighing those competing interests is it didn't hurt that Mr. Kilker was there and Mr. Gumar didn't have the right to have any attorney there, so Mr. Kilker's presence can't give rise to a claim that we somehow deprived Mr. Gumar of counsel. If anything, I believe, I don't want to put words in your mouth, Judge Livingston, as you said earlier, if anything, it helped Mr. Gumar to one degree or another to have Mr. Kilker there. Can't you imagine a circumstance where it's the worst of all possible worlds, where on the one hand, it seems that yes, he has a lawyer, and then on the other hand, well, he's not really his lawyer, and so there's no right that to counsel that, you know, because no right to counsel attaches? I'm sorry. I might be able to imagine such a circumstance, but I don't think that's what happened here, and it may be that, and I do think the fact that Mr. Gumar clearly did not have a right to counsel is determined. What about the Fifth Amendment, though? I mean, he was in custody, no doubt about that, and once he says he's in custody, even though the Sixth Amendment hasn't attached, once it's determined he's in custody and he says, I want a lawyer, questioning's supposed to stop, and okay, he had Kilker there at the meeting, but Kilker's saying, I don't really represent him on this. What's he supposed to do? Is it upon him to say, I'm not going to answer any more questions? Well, he wasn't being questioned at the November 29th meeting. At a later meeting on December 6th, the FBI conducted the interview that was made part of the state plea. But aren't there elements of compulsion around the making of the statement there? Yes. I mean, he was in custody. Yes. No question. He had already been brought to the U.S. Attorney's Office improperly versus on the basis of a writ that shouldn't have issued for that purpose, if I'm understanding the record correctly, and he was being told that you're only going to get this state plea, you're going to get life, or you can only cap it at twenty-five years if you talk to the FBI. Can you make a voluntary decision to speak in such circumstances? Well, that decision, whether or not to submit to the interview in connection with the state charges, he clearly had the advice of Mr. Kilker to do that. That has nothing to do with the federal charge other than ultimately we . . . If that statement were involuntary, it couldn't be used in connection with the federal charges. It would not have been usable in our case in chief, but there was no claim below that it was involuntary. There's no question but that at the commencement of that interview, which was recorded by audio and video, Miranda warnings were provided to Mr. Goumar in the presence of his state counsel, and Mr. Goumar waived his right. So if there was a Fifth Amendment right, Judge Droney, he waived it. So there's one more point that I'd like to bring out, and I have to apologize to the Court for this. I cited the case of United States v. Madunjanin for the notion that when there's a specific constitutional right at issue, one cannot resort to a claim of substantive due process deprivation, which is the government's position here that we're talking about whether or not the Sixth Amendment right to counsel was violated, and we shouldn't slide into a question of whether or not that amounted to some kind of substantive due process violation. What I omitted, and this is what I have to apologize for, is I think Madunjanin is dispositive of this case because in that case, the law enforcement officials took a pre-arraignment statement from the defendant knowing that his counsel wanted to speak with him, and they did not tell the defendant that his counsel wanted to intervene in that way. The only thing that resulted from that was the admission of the defendant's statement at trial, and this Court held that that was not interference with the right to counsel under the Sixth Amendment. I apologize for that because it's been a very convoluted process, I think, to get to this point, but as I look back and prepare for the argument, I think Moore, which establishes there was no Sixth Amendment right to counsel, and Madunjanin, which says that the admission of a statement taken in these kinds of circumstances . . . . . . could you enlighten us at all about why it took the government so long to effect the arrest? Well, I mean, as it turns out, I think the argument by Mr. Gumar is correct. We had most of the information, if not all of the information, before or by the time we filed the complaint or thereabouts, but that's not to say that we weren't continuing the investigation. First of all, the charges federally relate to the images that may have been produced during the abuse, not to the abuse itself, and there were questions about whether this friend of Mr. Gumar participated in the abuse by allowing his apartment to be used. I think it was a reasonable action on the part of the government to let the state do what it was doing, let's develop what we can federally, and then we'll bring the defendant in. I disagree that there's any requirement that an arrest warrant has to be issued in a specific time. I mean, day in and day out, that's what law enforcement officers do, is determine when to effect an arrest. Is it your position that it's okay, that it survives constitutional muster to . . . in a circumstance, and I understand that you would say that this is not that circumstance, to intentionally delay triggering the right to counsel for the sole purpose of negotiating a plea deal without an attorney being there, or for the sole purpose of protecting against ineffective assistance claims attacking the plea that eventually ensues? I would say, Your Honor, first that if we're talking about denying someone the right to counsel, then we should be talking about denying the right to counsel, not a due process claim. I do concede . . . I would say that there is a due process claim that's akin to statutes of limitations, in the sense that pre-accusation delay, even if it's revised to a due process claim, but when you're talking about years of delay, maybe the police have an arrest warrant, they lodge it, and they do nothing to try and find the defendant. Those types of circumstances can arise under the due process clause, in my opinion, but this has nothing to do with that, in my opinion, Your Honor. Especially, and even if it did, we're talking about a three-month delay, maybe, from the state arrest to appearance in federal court, and things were happening. Generally speaking, delay is improper, but unnecessary delay is not. Can I just follow up on that? Comparing the criminal complaint, which was from October . . . Yes. October 13, 2016, to the indictment, which is January 11, 2017, you said there were good reasons to seal that complaint, because our investigation was continuing. There might be other things. Was there a real difference between the charges in the criminal complaint and the ones that found their way into the indictment? There was a significant difference in the charges. They were expanded to include a new victim, the younger of the two victims. That was the five-year-old? Yes, Your Honor. Yes, it's my understanding, and I have not parsed this out, because I didn't see it as a significant issue, how much of the evidence that the government knew about in October . . . if new evidence had been obtained by the time of the return of the indictment, there may be a similarity in evidence, but the charges definitely expanded. Just making sure I'm remembering the record correctly, the defendant is brought in on the federal charges only after the state plea has been entered? That is correct, Your Honor. Thank you. Thank you, Your Honors, and thank you for the additional time. First, I just want to answer the court's question about the right to counsel. On page 38 of our opening brief, we talk about that the government's pre-indictment conduct did not preclude a Sixth Amendment violation, citing this court's Stein decision. We also raise that in our papers below. I don't understand the government's argument. I guess in the court below, they were arguing that Kilker counted and that he was perfectly fine, and now they're saying he doesn't count, and Mr. Goumier had no right to counsel on November 29th. It's sort of that they want it both ways, that either Kilker counts and all these decisions are informed, or he doesn't count and he doesn't have a right to counsel. The government can't . . . the abuse process, and then come to this court and say, well, you can't look at the Fifth Amendment unfair proceedings because you can only rely on the Sixth Amendment right to counsel. He can only assert one right. Well, they violated both of those rights, so he's entitled to the protection of both of them. Also, I wanted to say the record is complete with government evidence coming from the government's own sources that the investigation was complete by November 3rd. Everything in that eight-count indictment that was filed on January 11th was known by November 3rd. That's cited in my brief. There's numerous references. Also, the government, in their pretrial filings, they filed ten exhibits under seal that this court has, and those exhibits contain Agent Lyon's FBI 302 reports, where he talks about everything that was discussed at the meeting, which is everything that's in the indictment. And also, he notes that on December 21st, he received a call from ADA Bergman that said Gumer's state court guilty plea went through, and then on that date, they brought him . . . they applied for the writ to produce him in federal court for his initial appearance to answer to the sealed criminal complaint that they had already discussed with him in violation of their own sealing order. Again, that delay was caused by the government in an attempt to violate his Sixth Amendment rights, and we think that dismissal is required here. Any questions? Thank you both for your arguments. Thank you.  The criminal reserve decision. We'll hear the . . .